**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DEANTOINE WARREN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 16 C 4706** |
| **v.** ) | |
| ) | **Judge John Z. Lee** |
| ) | |
| **MEIJER,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

DeAntoine Warren ("Warren"), a *pro se* plaintiff, filed this suit under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1981, alleging that

Defendant Meijer ("Meijer") discriminated against him based on his race, failed to stop

harassment against him, and retaliated against him for asserting protected rights.  Meijer has

moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  For the

reasons that follow, Meijer's motion [11] is denied.  Warren's motion for attorney representation

[16] is also denied.

**<u>Background</u>**

This case arises from Warren's work as a Customer Service Line Lead at a Meijer store

in Rolling Meadows, Illinois.  Pl.'s Resp. Mot. Compel Arb., Ex. 2, ECF No. 20.  Before Warren

began work, he received a letter dated May 28, 2014, that summarized Meijer's offer of

employment.  *Id.*  The letter stated in part that "[e]xcept as expressly modified by the terms of

this letter, your employment is subject to all Meijer policies, procedures, work rules and

guidelines, which are incorporated by reference into this letter."  *Id.*  Meijer has approximately

146 different policies.  Def.'s Reply Supp. Mot. Compel Arb., Ex. 3, ECF No. 22-4.  One such

1

policy, which was in force at the time Warren was hired, is Meijer's Dispute Resolution Policy. Def.'s Mem. Supp. Mot. Compel Arb., Ex. A-2, ECF No. 12-1. The policy mandates arbitration for "all claims that arise out of or relate to the team member's employment and/or separation from employment with Meijer and that concern legally protected rights for which a court or governmental agency would be authorized by law to grant relief," including "claims of unlawful retaliation" and "claims of employment discrimination . . . , including, but not limited to, claims based on race." *Id.* at 6. Warren does not dispute that his claims fall within the scope of this mandate.

The offer letter requested that Warren "[p]lease print two copies of this letter—one for your records and one to sign and send back to Meijer. Please scan the signed copy to my attention at [a Meijer recruiter's email address]." Pl.'s Resp., Ex. 2. At the bottom of the letter, there is a line that reads "Acceptance of terms and conditions" and then states "I accept the terms and conditions stated above and agree to be bound by them." *Id.* A signature line follows. *Id.* The Court obtained a copy of this letter by way of Warren's response to Meijer's motion to compel arbitration. The signature line is not filled out and there is no evidence in the record that Warren signed and submitted the form.[1]

Warren accepted Meijer's offer of employment and began work shortly thereafter. Warren asserts that he began work on June 9, 2014, the date specified in his offer letter. *Id.* In its initial memorandum, Meijer asserted that Warren began work on June 20, 2014. Def.'s Mem. at 2, ECF No. 12. In its reply, however, Meijer concedes that Meijer's offer letter indicates that his first day was to be June 9. Def.'s Reply at 2–3, ECF No. 22.

---

[1] If there was any such evidence, Meijer would have presumably submitted it in support of its argument, discussed *infra*, that this letter incorporated the Dispute Resolution Policy by reference.

Meijer claims that, after he began work, Warren entered into a separate agreement to arbitrate disputes he might have against Meijer. As evidence of this agreement, Meijer offers the affidavit of Jennifer Ganz, a Retail Administrative Assistant at the Meijer store in Rolling Meadows. Def.'s Reply, Ganz Decl. ¶ 2, ECF No. 22-1. Ganz avers that, as part of Meijer's typical orientation procedures, Warren assented to the agreement on June 20, 2014. *Id.* ¶ 3. On that day, according to the affidavit, Ganz gave Warren a hard copy of Meijer's Dispute Resolution Policy, along with a number of other policies and documents, and asked Warren to review them. *Id.* ¶ 4. After doing so, she instructed Warren to access the company's intranet site, which required him to set up personal security questions. *Id.* ¶ 7. When Warren finished creating his personal security questions, Ganz directed Warren to a page that contained links to the various policies he had reviewed in hard copy, including the Dispute Resolution Policy. *Id.* ¶ 8; *see* Pl.'s Mem., Ex. A-3, ECF No. 12-1. Next to the links to the policies are boxes that invited Warren to "click to agree." Ganz Decl. ¶ 8; *see* Pl.'s Mem., Ex. A-3. Meijer submitted a screenshot of an intranet site page bearing Warren's name that indicates acceptance of the Dispute Resolution Policy and corresponding agreement. Pl.'s Mem., Ex. A-3. The screenshot further indicates acceptance of a number of additional policies and time stamps for when acceptance was recorded. *Id.*

Ganz recalls that Warren clicked to accept these policies, including the Dispute Resolution Policy, after electing not to review the policies because he had just reviewed them in hard copy. Ganz Decl. ¶¶ 8–9. She also notes that Warren completed an I-9 employment form and filled out direct deposit information. *Id.* ¶¶ 10–11. Ganz attests that "[n]one of this could [have] be[en] complete[d] without Mr. Warren's cooperation." *Id.* ¶ 11.

Warren, for his part, denies that Ganz gave him a copy of the Dispute Resolution Policy and denies that he ever "saw, read, clicked or otherwise agreed to [it]." Pl.'s Resp. at 1–2; *id.*, Ex. 1. He recalls meeting with Ganz and filling out a form regarding whether he had been convicted of a felony, after which he was instructed to "finish [his] training," but states that he was "never offered, nor did he participate[,] in any orientation." *Id.* at 1–2. His theory is that, because his purported acceptance of the agreement occurred over a week after his employment began, "someone . . . dropped the ball and did not put Plaintiff through orientation." *Id.* at 3. He surmises that, based on the time stamps recording his purported acceptance of various Meijer policies—some of which are mere seconds apart—someone "[l]ogged into the program and very quickly clicked through all of the documents." *Id.*

## Analysis

### I.    Motion to Compel Arbitration

The Federal Arbitration Act (FAA) mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Once a court is satisfied that an agreement to arbitrate exists, the FAA instructs the court to stay proceedings on issues subject to arbitration and provides a mechanism for parties to request that the court compel arbitration pursuant to the agreement. 9 U.S.C. §§ 3–4; *see also Tinder*, 305 F.3d at 733.

A party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. *Tinder*, 305 F.3d at 735. The opponent's evidentiary burden is akin to that of a party opposing summary judgment under

Federal Rule of Civil Procedure 56. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* The Court must believe the evidence of the party opposing arbitration and draw all justifiable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

In opposing arbitration, Warren argues that he never entered into an arbitration agreement with Meijer.[2] In determining whether an agreement to arbitrate exists, the Court applies state contract law. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). The parties do not contend that any law other than that of Illinois should apply, and in any case, Warren accepted his offer of employment and began working in Illinois.

In Illinois, hornbook contract formation requirements—offer, acceptance, and consideration—apply just as they otherwise would in determining whether an employer and employee have entered into an arbitration agreement. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). For an employer's communication to constitute an offer, it must be sufficiently clear and definite such that an employee "would reasonably believe that an offer has been made." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987). An employee must be aware of the offer's contents and reasonably believe the employer's

---

[2] In an initial response, Warren also contends that arbitration will be too expensive. Pl.'s Initial Resp. Mot. Compel Arb., ECF No. 17. But Meijer states that it covers all the costs of the arbitrator, Reply at 1 n.1, and Plaintiff has not provided "some individualized evidence that [he] likely will face prohibitive costs in the arbitration at issue and that [he] is financially incapable of meeting those costs." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). While the Court acknowledges Warren's financial status and permitted him to proceed *in forma pauperis* in this action, it cannot conclude, without more, that he will face prohibitive costs when proceeding before an arbitrator.

statement to constitute an offer. *Id.* An employee can accept an offer by commencing or continuing employment. *Melena*, 847 N.E.2d at 109. Continued work constitutes consideration for the agreement. *Id.*; *Duldulao*, 505 N.E.2d at 318.

In support of his argument that the parties did not have a valid agreement, Warren relies on his version of what occurred on June 20, 2014, and denies that he ever clicked to signify his agreement to Meijer's Dispute Resolution Policy. He argues, in other words, that Meijer never asked him to enter into an arbitration agreement and that he never accepted such an offer. At this stage, the Court must believe his version of events and draw all justifiable inferences in his favor. *Tinder*, 305 F.3d at 735. In doing so, the Court concludes that Warren has created a genuine issue of material fact as to whether he accepted the arbitration agreement, which he attests to never reviewing or accepting.

While Meijer has presented some evidence that Warren did in fact accept the arbitration agreement, including Ganz's sworn testimony, the Court cannot compel arbitration solely based on Meijer's evidence. Warren has responded with his own, sworn affidavit that specifically denies that he clicked to accept the agreement or otherwise agreed under Meijer's stated procedures.[3] His affidavit points to Meijer's inconsistent statements regarding his start date, which supports his position that he did not go through Meijer's typical employee orientation

---

[3] Meijer states in its reply brief that Warren's denial is "unsworn." Def.'s Reply at 2. But this is incorrect, as he signed his affidavit under penalty of perjury. *See* Pl.'s Resp., Ex. 2. Additionally, Meijer points out that Warren need not have signed the arbitration agreement in order to have accepted it. But this argument is unavailing, because even if Warren need not have signed, he still needs to have otherwise agreed. *Cf. Chillmark Partners, LLC v. MTS, Inc.*, No. 02 C 5339, 2003 WL 1964408, at *2 (N.D. Ill. Apr. 25, 2003) ("The offeror has complete control over an offer and can prescribe that the offeree must sign the contract to accept it; but contract formation does not require a signature unless the offer explicitly governs the mode of acceptance."). Finally, Meijer points out that Warren is a named class representative in another case, *Warren v. Meijer, Inc.*, No. 16-cv-05589, in which he has not taken the position that he did not enter into the arbitration agreement. But Warren seeks relief in that case for actions that occurred before he purportedly executed the arbitration agreement. Pl.'s Opp. Mot. Compel Arb. 2, *Warren v. Meijer, Inc.*, No. 16-cv-05589 (filed May 25, 2016), ECF No. 35.

process. Moreover, Meijer's argument that Warren must have supplied his I-9 and direct deposit information fails to rebut the inference—which the Court must draw at this stage in Warren's favor—that he did not separately assent to the arbitration agreement. Nothing Meijer has provided conclusively establishes that it was Warren who clicked to agree to Meijer's Dispute Resolution Policy. *See Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 788–89 (N.D. Ill. 2011) (denying a motion to compel arbitration where defendant pointed to electronic evidence that plaintiffs had accepted the agreement, but plaintiffs denied that they had viewed or accepted the agreement in sworn affidavits).

A question remains, however, as to whether Warren's acceptance of Meijer's offer of employment—which "incorporated by reference" all of Meijer's policies—constituted an agreement to arbitrate. Under Illinois law, "one instrument may incorporate another instrument by reference." *Turner Constr. Co. v. Midwest Curtainwalls, Inc.*, 543 N.E.2d 249, 251 (Ill. App. Ct. 1989) (citing *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*, 454 N.E.2d 249, 251 (Ill. 1983)). This general principle permits incorporation of arbitration clauses. *See id.* at 251–52. "The contract must show an intent to incorporate the other document and make it part of the contract itself." *Id.* at 251. Any ambiguity in language is construed against the drafter. *Id.* at 252.

"Illinois requires that incorporation be clear and specific." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (citing *Kirschenbaum v. Northwestern Univ.*, 728 N.E.2d 752, 762 (Ill. App. Ct. 2000)); *Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80, 82 (Ill. App. Ct. 1993)). If a contract unambiguously incorporates another document, courts must recognize the incorporation, but if the incorporation is ambiguous, the trier of fact must determine whether

it is effective. *Atl. Mut. Ins. Co. v. Metron Eng'g & Const. Co.*, 83 F.3d 897, 901–02 (7th Cir. 1996) (citing *Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (1991)).

In those cases where a court has held that an arbitration clause was successfully incorporated by reference, the incorporating document in question specifically identified the incorporated document containing the arbitration clause and informed the reader of the potential for arbitration. *Bernardo v. J.D. Nicholas & Assocs., Inc.*, No. 13 C 7085, 2014 WL 4913423, at *2 (N.D. Ill. Sept. 30, 2014); *Swanson v. U-Haul Int'l, Inc.*, 2014 WL 1673115, at *4, *8 (Ill. App. Ct. Apr. 23, 2014) (unpublished); *see also Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 634 (7th Cir. 2011) (applying the same principle under Indiana law to an employee in similar circumstances). Conversely, courts generally have refused to recognize incorporation by reference where the incorporating document does not mention the document to be incorporated or the existence of an arbitration clause. *Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, No. 10-CV-4746, 2011 WL 3563138, at *6 (N.D. Ill. Aug. 10, 2011) ("[T]he [contract] does not explicitly incorporate [the document containing an arbitration clause] in its entirety by reference, nor does it mention the arbitration provision found in that document."); *Timmerman v. Grain Exch., LLC*, 915 N.E.2d 113, 120 (Ill. App. Ct. 2009) (declining to find incorporation by reference where "the contracts in the case at bar did not themselves mention arbitration, and the [purportedly incorporated document], which contained the arbitration provision, had not been provided to or made available to the plaintiffs before they signed the contracts").

Here, the Court cannot conclude that the parties unambiguously incorporated Meijer's Dispute Resolution Policy by reference into Meijer's offer letter, such that Warren assented to the policy as a matter of law. First, there is no evidence in the record from which the Court can

conclude that Warren signed and returned the offer letter. While he accepted Meijer's offer of employment and commenced work, the present record does not conclusively establish that he did so with knowledge of Meijer's arbitration agreement.[4] Additionally, the offer letter does not unambiguously incorporate the Dispute Resolution Policy by reference. While the letter mentions "policies" generally, it does not refer to specific policies or documents, nor does it suggest where those policies or documents can be found. Nor does the letter indicate that one of those policies includes a mandatory arbitration provision. *Cf. Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("[W]e might ask whether the [contract] presented to [the employee] adequately communicate[d] all the terms and conditions of the agreement, and whether the circumstances support the assumption that [the employee] receive[d] reasonable notice of those terms.").

For these reasons, Meijer's motion to compel arbitration is denied at this time. That said, because the parties have yet to engage in any discovery, the factual record is sparse. Accordingly, a status hearing is set for August 3, 2017, at which time the Court will set an expedited schedule for discovery regarding the formation of the arbitration agreement. At the conclusion of that discovery, the parties will have an opportunity to file a motion for summary judgment as to this issue.

## II.     Motion for Attorney Representation

Warren asks the Court to recruit *pro bono* counsel to represent him in this case. "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The Court has discretion, however, to request that an attorney represent an

---

[4]     In its reply brief, Meijer states that, as part of his training, "Mr. Warren [ ] took courses on Meijer's policies since he was expected to know and enforce them with his employees." Reply at 6. But Warren disclaims knowledge of the Dispute Resolution Policy, Pl.'s Resp. at 2, and an affidavit from Meijer's former manager does not state that he had familiarity with the policy, Def.'s Mem., Ex. A-3, ECF No. 12-2.

indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In making the decision whether to recruit counsel, the Court asks whether (1) plaintiff has made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, the plaintiff appears competent to litigate the matter himself. *Id.* Factors to be considered include (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010); (2) plaintiff's submissions and pleadings, *Olson*, 750 F.3d at 712; (3) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc); and (4) the complexity of the case, *id.*

Here, the Court notes that the issue of the formation of an arbitration agreement is a routine matter of contract law and the underlying facts are not complicated. Furthermore, Plaintiff's filings indicate that he is capable of representing himself at this stage. As such, the Court declines to recruit representation for Plaintiff at this time.

<u>Conclusion</u>

For the foregoing reasons, Meijer's motion to compel arbitration [11] is denied with leave to refile. Warren's motion for attorney representation [16] is also denied with leave to refile. A status hearing is set for August 3, 2017, at 9:00 a.m.

**IT IS SO ORDERED. 7/20/17**                    **ENTERED:**

**JOHN Z. LEE**
**United States District Judge**